In Re: Alexis M. HERMAN (Weaver
Fee Application).

Division No. 98–2.

United States Court of Appeals,
District of Columbia Circuit.

Aug. 30, 2002.

Before: SENTELLE, Presiding, FAY and CUDAHY, Senior Circuit Judges.

Opinion of the Special Court filed PER CURIAM.

Separate opinion concurring in the judgment filed by Senior Circuit Judge CUDAHY.

## ORDER

This matter coming to be heard and being heard before the Special Division of the Court upon the petition of Vanessa J. Weaver for reimbursement of attorneys' fees and costs pursuant to section 593(f) of

the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994), and it appearing to the court that the application is allowable only to the extent reflected in the opinion issued contemporaneously herewith, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the United States reimburse Vanessa J. Weaver for attorneys' fees and expenses she incurred during the investigation by Independent Counsel Ralph I. Lancaster in the amount of $19,811.50.

PER CURIAM:

## ON APPLICATION FOR ATTORNEYS' FEES

Vanessa J. Weaver petitions this court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994) (the "Act"), for reimbursement of attorneys' fees in the amount of $367,707.62 that she incurred during and as a result of the investigation conducted by Independent Counsel ("IC" or "OIC") Ralph I. Lancaster, Jr. Because we conclude that Weaver has not carried her burden of showing that the fees would not have been incurred but for the requirements of the Act, we deny the petition except for those fees incurred for review and response to the IC's final report.

### BACKGROUND

In 1997 the U.S. Department of Justice ("DOJ") received information that then-Secretary of Labor Alexis M. Herman, while she was Special Assistant to the President in 1996, had engaged in possible illegal activity. Specifically, in 1994 Vanessa J. Weaver, a close friend of Herman's, formed a partnership, International Investment for Business Development ("IIBD"), with Laurent J. Yene. In 1996 Singaporean businessman Abdul Rahman entered into a retainer agreement with IIBD to promote a business of his in Africa. Weaver and Yene's partnership apparently ended soon thereafter, at which point Yene began making allegations of criminal conduct on the part of Weaver and Herman. In particular, Yene claimed that Herman, while Special Assistant to the President, had agreed to facilitate business for IIBD and another company co-owned by Weaver in exchange for a certain percentage of the profits made by the companies as a result of Herman's efforts. Additionally, Yene claimed that Herman improperly directed Weaver to solicit campaign contributions for the Democratic National Committee from clients of IIBD, including Abdul Rahman.

Thereafter, the Attorney General (hereinafter referred to as "AG" or "DOJ"), pursuant to section 592(a) of the Act, conducted a preliminary investigation to determine whether further investigation was warranted into whether Herman accepted the illegal payments or directed the solicitation of the illegal campaign contributions. On May 11, 1998, at the conclusion of the preliminary investigation, the AG, having determined that further investigation was warranted, submitted her application to us for the appointment of an independent counsel to look into the matter (hereinafter referred to as "Application").

On May 26, 1998, we appointed Ralph I. Lancaster, Jr. as independent counsel to further investigate the allegations. The investigation lasted almost two years and included numerous interviews, extensive document review, and substantial grand jury activity. Weaver's finances and those of her companies were looked into. Ultimately, no charges were brought against either Weaver or Herman. Abdul Rahman, however, was indicted on multiple counts of making illegal campaign contributions. Pursuant to the statute, the IC

submitted a final report to this court on April 7, 2000. 28 U.S.C. § 594(h)(1)(B).

Weaver, pursuant to section 593(f)(1) of the Act, has petitioned this court for reimbursement of the attorneys' fees that she incurred during the IC's investigation. As directed by section 593(f)(2) of the Act, we forwarded copies of Weaver's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.

### ANALYSIS

■ The Independent Counsel statute provides:

> Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

28 U.S.C. § 593(f)(1). Accordingly, in order to obtain an attorneys' fees award under the statute, a petitioner must show that all of the following requirements are met: 1) the petitioner is a "subject" of the investigation; 2) the fees were incurred "during" the investigation; 3) the fees would not have been incurred "but for" the requirements of the Act; and, 4) the fees are "reasonable." *See In re North (Dutton Fee Application)*, 11 F.3d 1075, 1077–82 (D.C.Cir., Spec.Div., 1993) (per curiam). The petitioner "bears the burden of establishing all elements of [her] entitlement." *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C.Cir., Spec.Div., 1996) (per curiam). There appears to be no

disagreement that Weaver was a "subject" of the IC's investigation. And although there is some dispute as to whether the fees were in fact incurred during the IC's investigation and are reasonable, we nevertheless need only limit our discussion to the third requirement, known as the "but for" test.

\*     \*     \*     \*     \*     \*

■ We have previously held that "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement." *In re Sealed Case*, 890 F.2d 451, 452 (D.C.Cir., Spec. Div., 1989) (per curiam). And we have repeatedly observed that "[t]he most difficult element for a fee applicant to establish under the Act is that the fees 'would not have been incurred but for the requirements of [the Act].'" *In re North (Bush Fee Application)*, 59 F.3d 184, 188 (D.C.Cir., Spec.Div., 1995) (per curiam) (quoting *Dutton*, 11 F.3d at 1079). In order to establish eligibility for an award, the fee applicant must show that the amounts claimed are only those fees and expenses above and beyond those she would have incurred as a result of an investigation by the DOJ. *In re Sealed Case*, 890 F.2d at 452–53. As we stated in *In Re Pierce (Olivas Fee Application)*, 178 F.3d 1350 (D.C.Cir., Spec.Div., 1999) (per curiam), "[i]f the investigative act generating the defensive costs would, in the absence of the Act, have been pursued by other authorities—'had the case been handled by the Department of Justice or other executive authorities rather than the Independent Counsel'—then Congress did not contemplate the award of counsel fees." *Id.* at 1355 (quoting *Dutton*, 11 F.3d at 1080).

Weaver argues that she satisfies the "but for" requirement under three distinct theories.

■ *Duplication of preliminary investigation.* We have in the past awarded

fees when the independent counsel's investigation constituted a substantial duplication of the preliminary investigation of the DOJ, thus satisfying the "but for" requirement. *See In re Olson*, 884 F.2d 1415, 1420 (D.C.Cir., Spec.Div., 1989) (per curiam) (IC's investigation "necessarily *duplicated* ground that had been covered by the preliminary investigation of the Department of Justice") (emphasis in original); *In re Olson (Perry Fee Application)*, 892 F.2d 1073, 1074 (D.C.Cir., Spec.Div., 1990) (per curiam) (fee applicant "was being subjected to expenses for a duplicative investigation that he would not have been subjected to in the absence of the Ethics in Government Act"). Weaver claims that here the IC's investigation in large measure duplicated the DOJ's preliminary investigation because "it is clear from the final report that: (1) the actual matters involved in the investigation did not stretch beyond the matters of import to the Attorney General and (2) the analysis involved in reaching his determination did not differ from that utilized by the Attorney General in her Application for an Independent Counsel."

We note that the process of an independent counsel investigation set up by the Act will by its very nature necessarily replow some of the same ground already tilled by the DOJ. Section 592(a)(1) directs the Attorney General to conduct a preliminary investigation "in order to make a determination ... on whether *further investigation* is warranted, with respect to each potential violation, or allegation of a violation, of criminal law." 28 U.S.C. § 592(a)(1) (emphasis added). Consequently, the matters under investigation by an independent counsel are generally going to be the same as those investigated during the preliminary investigation. The question we need to answer is whether the investigation by the IC merely duplicates that of the DOJ. Duplication by definition does not occur if the IC's investigation extends significantly beyond that of the DOJ's preliminary investigation. *See In re Olson*, 884 F.2d at 1420 ("but for" requirement satisfied where "[t]he *greater portion* of [the IC's] investigation" duplicated that of the DOJ) (emphasis added). In *In re Pierce (Kisner Fee Application)*, 178 F.3d 1356 (D.C.Cir., Spec.Div., 1999) (per curiam), we stated that the fee applicant could not satisfy the "but for" requirement by establishing that the Independent Counsel's investigation duplicated that of the DOJ because "the Independent Counsel's investigation ranged far beyond the preliminary investigation not only in depth but breadth. The matters investigated as to Kisner are far beyond anything in the preliminary investigation." *Id.* at 1360. We find similar circumstances here. Under the Act the AG was limited to 150 days within which to complete her preliminary investigation, and while conducting it she was not allowed, *inter alia*, to convene grand juries or grant immunity. 28 U.S.C. § 592(a)(2). According to the IC, the DOJ in conducting the preliminary investigation gathered 9,500 pages of documents from 15 persons and conducted 100 interviews of 89 persons. In contrast, the IC conducted his investigation of the allegations surrounding Herman over a period of almost two years, during which time he obtained over 250,000 pages of documents, interviewed 168 witnesses in a series of 203 interviews, questioned 57 persons before the grand jury of whom 43 had not been questioned as part of the preliminary investigation, and granted immunity to 12 persons. Additionally, the IC obtained an indictment of Abdul Rahman on multiple counts of making illegal campaign contributions through Vanessa Weaver, in violation of U.S. election laws. Therefore, the IC's investigation cannot in any relevant sense be considered duplica-

tive of the DOJ's preliminary investigation.

■ *The Act restricted the AG's preliminary investigation.* Weaver's second argument for her satisfying the "but for" requirement is that the provisions of the Act prevented the DOJ from following its normal procedures during the preliminary investigation, and that otherwise the investigation would have been terminated or severely limited. To support this claim, Weaver cites to the AG's application for the appointment of an IC where the AG twice mentions the need for further investigation because of the "limited investigative tools" available to her under the Act. Weaver contends that if the AG had not been so limited then the AG "could have confirmed the conclusion that Yene's allegations were completely false." As such, Weaver argues that her situation is "remarkably similar" to that in *In re Donovan*, 877 F.2d 982 (D.C.Cir., Spec.Div., 1989) (per curiam).

In *Donovan* we found the "but for" requirement satisfied because there was a single witness of dubious credibility who would not cooperate during the preliminary investigation. If the AG's office ·had been able to use normal prosecutorial means to assess the witness's credibility, then there would have been no need for the appointment of an independent counsel. *Id.* at 986–89. Here, in contrast, the principal witness, Yene, cooperated during the preliminary investigation, and the allegations against Herman did not rise and. fall simply on his credibility: in requesting the appointment of an independent counsel, the AG in her Application cited to "inconsistent and evolving explanations by other critical witnesses." We therefore agree with the IC "that if the Attorney General had had all of the standard prosecutorial tools available to her, the scope, depth and thoroughness of her investiga-

tion would have been similar, if not identical, to that of the Independent Counsel."

■ *Subjected to a more rigorous application of the criminal law.* Weaver's final claim for satisfying the "but for" requirement is that she was subjected to a more rigorous application of the criminal laws than she would have been in the absence of the Act because the "investigation lasted for almost two years, and examined every nook and cranny of [her] life." Weaver analogizes her case to both *In re Sealed Case*, 890 F.2d 451, 454 (D.C.Cir., Spec. Div., 1989) (per curiam), and *In re Meese*, 907 F.2d 1192, 1201 (D.C.Cir., Spec.Div., 1990) (per curiam).

In *Meese*, we held the "but for" requirement satisfied in part because "[t]he investigation continued for 14 months and was broadened far beyond any investigation contemplated by the initial referral." 907 F.2d at 1201 (footnote omitted). We noted that Meese also fulfilled the "but for" requirement in part because no preliminary investigation pursuant to the Act was conducted prior to referral of the matter to the independent counsel by the Acting Attorney General; the referral "did not eliminate the necessity for compliance with the requirement ... that there be a preliminary investigation and finding of reasonable grounds to believe that further investigation or prosecution of [Meese] ... was warranted." 907 F.2d at 1197. Meese was subjected to a more rigorous application of the criminal law, then, because of both "the extreme expansion of the resulting investigation" and "the basis upon which the referral was made." *Id.* at 1201. Neither of these conditions are present in the case before us: the investigation by the IC never expanded beyond that originally proposed by the Attorney General in her Application, and the basis upon which the Attorney General made her referral was never in dispute.

In *Sealed Case* we held that the "but for" requirement was satisfied because the petitioner's tax returns were examined for a period of nine years and "the ordinary examination of a taxpayer for [such a] violation would have been substantially less probing." 890 F.2d at 454. It does not appear that any such less probing examination would have been made of Weaver's conduct in the absence of the Act. As both the IC and the DOJ point out, the principal allegations underlying this matter, i.e., a senior White House official receiving payments for using her influence to further the interests of business clients of a friend and her participation in a conduit scheme to solicit campaign contributions from a foreign national, would have been thoroughly investigated by the DOJ in the absence of the Act.

\* \* \* \* \* \*

In sum, we agree with both the Department of Justice and the Independent Counsel that the allegations that Alexis Herman received illegal payments from business entities wholly or partly controlled by Weaver, and that Weaver and/or her companies served as a conduit for unlawful political donations by Rahman, would have been similarly investigated absent the IC statute. Weaver has not satisfied the "but for" requirement under any of the theories that she relies upon because she "was not subjected to an investigation that [she] would not have been subjected to in the absence of the Act." *In re Nofziger,* 925 F.2d 428, 446 (D.C.Cir., Spec.Div., 1991) (per curiam).

■ But although Weaver was not investigated by the IC differently than she would have been otherwise, in the absence of the Act she would not have incurred fees for review and response to the IC's final report. Section 594 of the Act requires that the independent counsel "file a final report with the division of the court, setting forth fully and completely a de-

scription of the work of the independent counsel...." 28 U.S.C. § 594(h)(1)(B). Absent the Act, federal "prosecutors do not issue reports." *In re North,* 16 F.3d 1234, 1238 (D.C.Cir., Spec.Div., 1994). Indeed, as we have observed before, "[t]he filing of reports by Independent Counsels is 'a complete departure from the authority of a United States Attorney' and is 'contrary to the practice in federal grand jury investigations.'" *Id.* (quoting *In re Sealed Motion,* 880 F.2d 1367, 1369–70 (D.C.Cir., Spec.Div., 1989) (per curiam)). Therefore, we hold that the amount of $19,811.50 in reasonable attorneys' fees that Weaver incurred for reviewing and responding to the IC's final report is reimbursable.

### CONCLUSION

For the reasons set forth above, we allow in part the petition of Vanessa J. Weaver to the extent of ordering reimbursement for attorneys' fees in the amount of $19,811.50. We deny the balance of the petition as not meeting the "but for" requirement of the Act, 28 U.S.C. § 593(f)(1).

CUDAHY, Circuit Judge, concurring in judgment.

The majority's disposition of this application is on all fours with its treatment of the petition for attorneys' fees for Alexis Herman. Similarly to former Secretary Herman, Vanessa Weaver has attempted to justify payment of her attorneys' fees based on our earlier opinions in *In re Olson,* 884 F.2d 1415 (D.C.Cir., Spec.Div., 1990) (per curiam) and *In re Donovan,* 877 F.2d 982, 987 (D.C.Cir., Spec.Div., 1989). Both opinions granted the requested attorneys' fees. In *Olson,* we ruled that the "but for" test was satisfied because the independent counsel investigation was held to be largely duplicative of the Attorney

General's preliminary investigation. 884 F.2d at 1420. In *Donovan*, this test was satisfied because the restrictive provisions of the Ethics in Government Act limited the ability of the Attorney General to conduct an adequate preliminary investigation. 877 F.2d at 987.

For the reasons discussed in my separate opinion in *In re Herman*, 297 F.3d 1095, 1102–1105 (D.C.Cir., Spec.Div., 2002) (Cudahy, J., concurring), I believe that *Olson* and *Donovan* would be very difficult to distinguish as a matter of first impression. But Weaver is now part of a long list of unsuccessful fee petitioners, as to whom *Olson* and *Donovan* have been consistently distinguished in a number of cases of relatively recent vintage. *See, e.g., In re Babbitt*, 290 F.3d 386, 393–94 (D.C.Cir., Spec.Div., 2002) (distinguishing *Olson*); *In re Pierce (Sanders Fee Application)*, 198 F.3d 899, 904 (D.C.Cir., Spec. Div., 1999) (distinguishing *Olson* and *Donovan*); *In re Pierce (Kisner Fee Application)*, 178 F.3d 1356, 1360–61 (D.C.Cir., Spec.Div., 1999) (same); *In re Pierce (Olivas Fee Application)*, 178 F.3d 1350, 1354 (D.C.Cir., Spec.Div., 1999) (distinguishing *Olson*); *In re Nofziger*, 938 F.2d 1397, 1404 (D.C.Cir., Spec.Div., 1991) (same); *In re Nofziger*, 925 F.2d 428, 439–50 (D.C.Cir., Spec.Div., 1991) (distinguishing *Donovan*). But with respect, I do not believe attempts to distinguish *Olson* and *Donovan* get to the heart of the matter.

To my mind, the "but for" test has not been satisfied here for the simple reason that the allegations involved a generic or common sort of wrongdoing crying out for investigation by existing agencies. The case eventually resulted in the indictment of Abdul Rahman, a foreign national, on multiple counts of illegal campaign contributions, and the indictment specifically alleged that Weaver served as the conduit for these illegal payments. As noted by the Department of Justice in evaluating Weaver's petition, "from an objective standpoint, we do not think that it can plausibly be contended that investigation of this kind of conduct would not have been pursued in the absence of the requirements of the Independent Counsel statute." DOJ Evaluation, at 10; *cf. In re Pierce (Pierce Fee Application)*, 213 F.3d 713, 718 (D.C.Cir., Spec.Div., 2000) ("The convoluted nature of the corruption involved and the high profile identity of the suspects and defendants would no doubt have resulted in a complex and lengthy investigation with or without the appointment of an independent counsel." (quotations omitted)). Thus, the "but for" test has not been satisfied.