**In re Samuel R. PIERCE, Jr.**
**(Seligman Fee Application).**

**Division No. 89–5.**

United States Court of Appeals,
District of Columbia Circuit.

Filed Jan. 18, 2000.

Before: SENTELLE, Presiding, FAY and CUDAHY, Senior Circuit Judges.

Opinion for the Special Court filed PER CURIAM.

## ORDER

This matter coming to be heard and being heard before the Special Division of the Court upon the petition of Irving R. Seligman for reimbursement of attorneys' fees and costs pursuant to section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994), and it appearing to the court for the reasons set forth more fully in the opinion filed contemporaneously herewith that the petition is not well taken, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the petition of Irving R. Seligman for attorneys' fees he incurred during the investigation by Independent Counsels Arlin M. Adams and Larry D. Thompson be denied.

## ON APPLICATION FOR ATTORNEYS' FEES

PER CURIAM:

Irving R. Seligman petitions this court under section 593(f) of the Ethics in Government Act of 1978, as amended, 28 U.S.C. § 591 *et seq.* (1994) (the "Act"), for reimbursement of attorneys' fees ·in the amount of $745,116.25 that he incurred during and as a result of the investigation conducted by Independent Counsels ("IC") Arlin M. Adams and Larry D. Thompson. Because we conclude that Seligman has not carried his burden of showing that the fees would not have been incurred but for

the requirements of the Act, we deny the petition in its entirety.

## Background[1]

In 1978 Congress established the moderate rehabilitation ("mod rehab") program within the U.S. Department of Housing and Urban Development ("HUD"). This program encouraged developers to upgrade moderately substandard housing units for occupation by low income families. In 1988 HUD's Inspector General ("IG") conducted an audit of the mod rehab program as administered from 1984 through 1988 and found that the program was not being administered efficiently, effectively, or economically. The Inspector General's audit report triggered congressional investigations into abuses, favoritism, and mismanagement at HUD during the 1980s under the tenure of HUD Secretary Samuel R. Pierce, Jr. Irving R. Seligman, the fee petitioner here, owned and operated HUD properties that received substantial HUD funding.

Based on information elicited during the congressional investigations, the House Judiciary Committee wrote to Attorney General Richard Thornburgh seeking the appointment of an independent counsel to investigate the matter. Following a preliminary investigation, Attorney General Thornburgh applied to this court for appointment of an independent counsel. On March 1, 1990, we appointed former United States Circuit Judge Arlin Adams[2] as independent counsel "to investigate ... whether Samuel R. Pierce, Jr., and other [HUD] officials may have committed the crime of conspiracy to defraud the United States or any other Federal crimes ... relating to the administration of the selection process of the Department's Moderate

---

1. We have had recent occasion to review the facts of this matter in *In re Pierce (Olivas Fee Application)*, 178 F.3d 1350 (D.C.Cir., Spec. Div., 1999) (per curiam). Rather than replow recently tilled ground, we have adopted much of the language in the background portion of this opinion, and, where applicable, a portion of the analysis from that decision.

2. Independent Counsel Adams resigned in May of 1995. This court appointed his deputy, Larry D. Thompson of the Atlanta bar, to succeed him.

Rehabilitation Program from 1984 through 1988." Order Appointing Independent Counsel, March 1, 1990.

The IC conducted a comprehensive investigation ultimately confirming a widespread pattern of corruption at HUD during Pierce's tenure. Although the IC announced on January 11, 1995, that he would not seek indictment of Pierce, during the course of the investigation seventeen (17) other persons were charged with and convicted of federal crimes as a result of the IC's investigation. That investigation and the indictments ranged well beyond the core facts of the original application for appointment of independent counsel. Of particular reference to the petitioner before us, the IC investigated a $100,000 loan given by Seligman to HUD Assistant Secretary Thomas T. Demery.

The IC's investigation is now complete. Pursuant to the statute, the IC submitted a final report to this court on March 30, 1998. *See* 28 U.S.C. § 594(h)(1)(B). We ordered the report made public by order of October 27, 1998. Thereafter, Seligman, pursuant to section 593(f)(1) of the Act, petitioned this court for reimbursement of his attorneys' fees. As directed by section 593(f)(2) of the Act, we forwarded copies of Seligman's fee petition to the Attorney General and the IC and requested written evaluations of the petition. The court expresses its appreciation to the IC and the Attorney General for submitting these evaluations, which we have given due consideration in arriving at the decision announced herein.

### Analysis

Unique in the criminal law structure of the United States, the Ethics in Government Act provides for reimbursement of attorneys' fees expended by subjects in defense against an investigation under the Act. Specifically, 28 U.S.C. § 593(f)(1) states:

Upon the request of an individual who is the subject of an investigation conducted by an independent counsel pursuant to this chapter, the division of the court may, if no indictment is brought against such individual pursuant to that investigation, award reimbursement for those reasonable attorneys' fees incurred by that individual during that investigation which would not have been incurred but for the requirements of this chapter.

■ Because the Act "constitutes a waiver of sovereign immunity it is to be strictly construed." *In re Nofziger*, 925 F.2d 428, 438 (D.C.Cir., Spec. Div., 1991) (per curiam). Therefore, the Act provides only reimbursement for attorneys' fees that survive an elemental analysis determining whether the petitioner is the "subject" of the independent counsel's investigation, incurred the fees "during" that investigation, and would not have incurred them "but for" the requirements of the Act. The petitioner "bears the burden of establishing all elements of his entitlement." *In re North (Reagan Fee Application)*, 94 F.3d 685, 690 (D.C.Cir., Spec. Div., 1996) (per curiam). We conclude that Seligman has not met the "but for" requirement.

As we have held, "[a]ll requests for attorneys' fees under the Act must satisfy the 'but for' requirement of" the Act. *In re Sealed Case*, 890 F.2d 451, 452 (D.C.Cir., Spec. Div., 1989) (per curiam). The purpose of awarding only fees that would not have been incurred "but for" the Act is to ensure that "officials [and here derivative 'subjects'] who are investigated by independent counsels will be subject only to paying those attorneys' fees that would normally be paid by private citizens being investigated for the same offense by" federal executive officials such as the United States Attorney. *Id.* at 452–53 (citing S.Rep. No. 97–496, 97th Cong., 2d Sess. 18 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3537, 3554 (referring to "fees [that] would not have been incurred in the absence of the special prosecutor [independent counsel] law")).

As we have stated "[t]he most difficult element for a fee applicant to establish under the Act is that the fees 'would not have been incurred but for the requirements of [the Act].'" *In re North (Bush Fee Application)*, 59 F.3d 184, 188 (D.C.Cir., Spec. Div., 1995) (per curiam) (quoting *In re North (Dutton Fee Application)*, 11 F.3d 1075, 1079 (D.C.Cir., Spec. Div., 1993) (per curiam)). In part this is so because the element requires a petitioner to prove a negative and one with a high component of speculation. In part, though, it is difficult because the law contemplates that it should be difficult, that such fees will not be a common thing. As we stated above, the contemplation of the legislation is not that subjects of independent counsel investigations will be reimbursed for all legal fees, but only that they will be reimbursed for those legal fees that would not have been incurred by a similarly situated subject investigated in the absence of the Act.

Nonetheless, we have found that petitioners qualify for an award of fees in the face of the but-for test in at least four (4) circumstances:

(1) When the independent counsel's investigation substantially constituted duplication of the preliminary investigation conducted by the Department of Justice ("DOJ"). *See In re Olson*, 884 F.2d 1415, 1420 (D.C.Cir., Spec. Div., 1989) (per curiam); *Dutton*, 11 F.3d at 1080.

(2) When the petitioning subject has been "prejudiced by the Department of Justice's failure to comply with the substantial protective features of the Act." *In re Nofziger*, 925 F.2d at 438 (citing *In re Meese*, 907 F.2d 1192 (D.C.Cir., Spec. Div., 1990) (per curiam)).

(3) When in the absence of the requirements of the Act " 'the case could have been disposed of at an early stage of the investigation,'" without subjecting the petitioning subject to the conditions that led to his incurring the fees sought. *In re Segal (Sagawa Fee Application)*, 151 F.3d 1085, 1089 (D.C.Cir., Spec. Div., 1998) (per curiam) (quoting *In re Nofziger*, 925 F.2d at 438).

(4) Not wholly distinct from No. 3, *supra*, when "high public officials [or derivative subjects] were investigated under the Act in circumstances where private citizens would not [have been] investigated." *In re Nofziger*, 925 F.2d at 442; *see also Dutton*, 11 F.3d at 1080.

■ Seligman argues that he satisfies the "but for" requirement under categories (1), (3), and (4). As to category (1), Seligman claims that he was subjected to "duplicative" prosecutions because "both the DOJ and the OIC examined the possibility of prosecuting Mr. Seligman, and both obtained a great deal of evidence for the purpose of doing so."[3] Reply to DOJ and OIC Evaluations at 21. He is, in effect, arguing that category (1) is satisfied here because the DOJ, to which his case was transferred at the end of the IC's investigation, duplicated the IC's investigation of him. However, as we held in *In re Pierce (Sanders Fee Application)*, 198 F.3d 899 (D.C.Cir., Spec. Div., 1999) (per curiam), the Act and its legislative history lead us to conclude that category (1) can only be satisfied when the IC duplicates the preliminary investigation of the DOJ. Seligman has put forth no evidence that such duplication occurred in this investigation, and thus does not fit into category (1).

■ As to category (3), Seligman claims that the Attorney General was reluctant to have an independent counsel appointed but that the Act compelled the Attorney General to do so. Seligman points out that after his case was transferred to the DOJ at the completion of the IC's investigation, the DOJ took no prosecutorial action against him, eventually closing his case.

---

**3.** We note that two paragraphs before, in claiming that his case fits the "but for" category because the DOJ elected not to prosecute him, Seligman states that "DOJ did not … commit any act whatsoever that Mr. Seligman is aware of to further any prosecution." Reply to DOJ and OIC Evaluations at 20.

He argues that this shows that if there had been no IC Act then the DOJ would not have "pursued" him when initially presented with the matter.

Seligman compares his case to *In re Segal (Segal Fee Application)*, 145 F.3d 1348 (D.C.Cir., Spec. Div., 1998) (per curiam), in which we held that the "but for" requirement was satisfied because the Attorney General in her application to the court seeking appointment of an independent counsel stated that she was compelled to apply for an independent counsel even though "the Department of Justice would in all likelihood exercise its discretion to decline to prosecute this case as a criminal matter." *Id.* at 1352. Ultimately, the IC in the Segal matter closed the investigation without any indictments. But here, as we noted in *Sanders*, "we can discern nothing in the Attorney General's Application that would lead us to believe that he was in any way hesitant to have an independent counsel appointed based on the substance of the evidence available to him." *Sanders*, 198 F.3d at 908. Indeed, the Attorney General made specific reference to the "breadth of the allegations" in the matter, Application for Appointment of Independent Counsel at 5, which as we noted above led ultimately to numerous indictments. Additionally, one of the main figures in the HUD investigation was Assistant Secretary Thomas Demery, who was investigated for, and eventually pled guilty to, receiving an illegal gratuity. The gratuity was paid by Seligman. In sum, we conclude that if the IC had not investigated this matter then, as we stated in *In re Pierce (Kisner Fee Application)*, 178 F.3d 1356 (D.C.Cir., Spec. Div., 1999) (per curiam), "the Attorney General or other investigative authority would have pursued allegations of corruption as deep and widespread as those occasioning the Independent Counsel's investigation." *Id.* at 1360; *see also Olivas*, 178 F.3d at 1355.

In a further reference to the DOJ's decision not to prosecute him, Seligman claims that he satisfies category (4). Citing to this court's Boland Amendment cases, *see, e.g., Dutton*, 11 F.3d at 1080; *In re North (Gadd Fee Application)*, 12 F.3d 252, 252 (D.C.Cir., Spec. Div., 1994) (per curiam), in which we held that the "but for" requirement was satisfied where the IC treated as criminal conduct that had never before been considered as such, Seligman states that since the DOJ declined prosecution in his case, then "[i]t is clear ... that this matter would not have been treated 'criminally' *but for* the Independent Counsel's investigation." Seligman Application at 9. We disagree. After conducting an investigation, a prosecutor's decision not to prosecute in the matter does not in any way imply that the conduct investigated was not considered criminal. Prosecutors decline to prosecute for many reasons, including cost, manpower, sufficiency of evidence, and so forth. We are not privy to the DOJ's reasons for declining prosecution in this matter. However, as we stated above, we know that a public official was investigated for, and pled guilty to, accepting an illegal gratuity, and that Seligman paid the gratuity. Under these circumstances we are persuaded that the DOJ would have investigated the Seligman case as a criminal matter if the IC had not done so, resulting in a comparable incurrence of attorneys' fees by Seligman.

Seligman argues that he further satisfies category (4) because his conduct which was investigated by the IC, that is, his provision of a gratuity to Demery, is not illegal. He states that "[t]he DOJ has traditionally not pursued such prosecutions" because of their "attenuated nature." Reply to DOJ and OIC Evaluations at 25. Citing to *United States v. Sun–Diamond Growers of California*, 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999), in which the Court held that a violation of the illegal gratuity statute only occurs when there is a link between the gratuity and a specific act for or because of which the gratuity was given, Seligman argues that his situation is governed by that case because "there was no tie between the loan provided to Demery

by Mr. Seligman ... and the actions taken by Demery at HUD." Reply to DOJ and OIC Evaluations at 23. We do not find this argument persuasive. The IC in his Final Report stated that the gratuity given by Seligman to Demery occurred at the same time that Demery was acting to fund certain projects owned and developed by Seligman. *See* 2 ARLIN M. ADAMS & LARRY D. THOMPSON, FINAL REPORT OF THE INDEPENDENT COUNSEL IN RE: SAMUEL R. PIERCE, JR. 71 (1998). Under these circumstances we feel confident that the DOJ would have looked into the matter if it had been within its jurisdiction. We are even more convinced, however, that this would be the outcome in light of the DOJ's own words on the matter: in its evaluation of Seligman's Application, after noting Seligman's conduct as described in the IC's Final Report, the DOJ stated that Seligman "could not argue that this kind of conduct would not have been investigated in the absence of an Independent Counsel law." DOJ Evaluation at 9.

### Conclusion

The petition of Irving R. Seligman for reimbursement of attorneys' fees is denied for failure to comply with the "but for" requirement of 28 U.S.C. § 593(f)(1).